UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EAST JORDAN PLASTICS, INC.  and
EAST JORDAN PLASTICS, INC.  HEALTH
AND DENTAL PLAN,

                Plaintiffs,

                                                Case No. 12-cv-15621

vs.                                     HON. GERSHWIN A. DRAIN

BLUE CROSS AND BLUE SHIELD OF
MICHIGAN,

                Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS UNDER RULE 12(b)(6)[#18] AND DISMISSING PLAINTIFFS' STATE LAW CLAIMS WITH PREJUDICE

### I.    INTRODUCTION

        Plaintiffs, East Jordan Plastics, Inc.  ("East Jordan") and East Jordan Plastics, Inc. Health and Dental Plan ("Plan"), filed the instant action on December 21, 2012, alleging that Defendant, Blue Cross and Blue Shield of Michigan ("BCBS"), violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., as well as Michigan law by charging and hiding fees that were not a part of the parties' Administrative Service Contract ("ASC") for BCBS claims administration services.   This case is but one of nineteen (19) cases currently pending before this Court raising claims that BCBS breached its fiduciary duty by skimming from monies entrusted to

-1-

it to pay plaintiffs' healthcare claims.[1]

Presently before the Court is BCBS's Motion to Dismiss under Rule 12(b)(6), filed on February 19, 2013.  This matter is fully briefed and a hearing was held on April 30, 2013.  For the reasons that follow, the Court grants in part and denies in part BCBS's Motion to Dismiss.

## II.    FACTUAL BACKGROUND

East Jordan is a manufacturer of plastic horticultural containers.  East Jordan offers health care benefits to its employees through the Plan, which is a self insurance plan whereby East Jordan engages BCBS to administer and pay employee claims in exchange for East Jordan's agreement to pay BCBS certain fees and reimburse the cost of those claims.   East Jordan also purchases "stop loss" insurance to cover health care claims that exceed a specified threshold.

On August 1, 2003, the parties executed the ASC, wherein the parties agreed that "BCBS[] will process and pay, and [EJP] . . . will reimburse BCBS[] for all Amounts Billed related to Enrollees' claims . . . ."  *See* Compl., Ex. 1 at 3.  Article III of the ASC describes East Jordan's financial responsibilities:

> [East Jordan] will, for each Contract year, pay BCBSM the total of the following amounts:
>
> 1.      Amounts Billed for the current Contract Year.
> 2.      The advance deposit representing the amount held by BCBSM to fund claims paid by BCBSM prior to reimbursement from the Group.
> 3.      The hospital prepayment reflecting the amount BCBSM determines is necessary for its funding of the prospective hospital reimbursement.
> 4.      The actual administrative charge.
> 5.      The group conversion fee.
> 6.      Any late payment charge.
> 7.      Any statutory and/or contractual interest.

---

[1]  On April 24, 2013, this Court denied Plaintiffs' Motion to Consolidate this action with nine actions currently pending before the Honorable Victoria A. Roberts as unauthorized under Federal Rule of Civil Procedure 42(a) and E.D. Mich.  L.R. 83.11(b)(7)(D).  *See* Dkt.  No.  26.

    8.       Stop Loss premiums, if applicable.

    9.       Cost containment program fee, if applicable.

    10.     Any other amounts which are [East Jordan]'s responsibility pursuant to this Contract, including but not limited to risks, obligations or liabilities, deficit amounts relating to settlements

The Provider Network Fee, contingency, and any cost transfer subsidies or surcharges ordered by the State Insurance Commissioner as authorized pursuant to 1980 P.A. 350 will be reflected in the hospital claims cost contained in the Amounts Billed.

*Id*. at 6-7.   The ASC defines "Amounts Billed" as "the amount [East Jordan] owes in accordance with [BCBS]'s standard operating procedures for payment of Enrollees' claims. *Id.* at 1. The 2003 ASC and 2003 Schedule A were renewed each year through 2013.

East Jordan alleges that it recently learned that starting in 1994, BCBS implemented a scheme to secretly obtain more administrative compensation than it was entitled to. An internal BCBS memorandum describes this alleged scheme. *Id*., Ex. 3. The memorandum states in relevant part:

RETENTION REALLOCATION
EXECUTIVE SUMMARY

Blue Cross and Blue Shield of Michigan (BCBSM) has revised its pricing methodologies for self-funded plans to address operational inefficiencies, promote customer satisfaction and respond to competitive demands.

*               *               *

ADMINISTRATIVE FEES

The advent of self-funding as an alternative to insured programs has highlighted administrative fees as a cost and a concern to customers purchasing a BCBSM ASC plan. Citing BCBSM's high costs, many customers have complained and have threatened to leave if relief was not provided.

*               *               *

RECOMMENDATION

Reflecting certain BCBSM business costs in hospital claims costs will provide long-term relief to the problems detailed above and will also satisfy short-term objectives

-3-

> of enhancing customer relationships while cutting operational costs. Inclusion of these costs in our hospital claim costs is actually more reflective of the actual savings passed on to customers as it will now include the hospital savings net of the costs incurred to provide these savings. This will also improve our operational efficiencies since mass mailings for subsidy amount charges will no longer be necessary. Changes to these costs will be inherent in the system and no longer visible to the customer.

*Id.* at 1-2. Thus, East Jordan maintains that BCBS's scheme was to lower its disclosed administrative fee to give the illusion of lower cost, while at the same time artificially inflating the amounts it reported as hospital claims costs. BCBS then kept the difference between what it was actually paying hospitals for employee claims and what it reported it was paying for hospital claims. The memorandum further stated that the new pricing method would eliminate the problems associated with reporting fees as "an add-on to the bill, highlighted for all to see." *Id.* at 1. East Jordan claims BCBS has charged these "hidden fees" since 2003.

East Jordan further alleges that BCBS provided false and misleading settlement statements and 5500 Forms. The 2003 ASC requires BCBS to provide East Jordan with "a detailed settlement showing the Amounts Billed to and owed by [East Jordan] . . . ." and "a settlement of the estimated and the actual administrative charges . . . ." *See* Compl., Ex. 1 at 9. East Jordan maintains that the "hidden fees" were never disclosed in BCBS's settlement statements nor did BCBS disclose how much it was retaining as compensation for administration of the Plan. BCBS also provided false Form 5500 reports, which are reports developed by the Department of Labor that employers are required to file as part of their obligations under Title I and Title IV of the ERISA, as well as under the Internal Revenue Code. East Jordan argues that the 5500 Form Reports were false because they overstated the actual amount of payment for claims by failing to disclose that the amount of the total claims paid included the "hidden fees" that BCBS retained as administrative compensation. Lastly, East Jordan asserts that BCBS trained its sales representatives to intentionally conceal the "hidden

fees" from customers.

East Jordan alleges the following claims: Breach of Fiduciary Duty–ERISA, Count I; Prohibited Transaction under ERISA, Count II; Violation of Michigan's Nonprofit Health Care Corporation Reform Act, MICH. COMP. LAWS § 550.1101 *et seq.*, Count III; Health Care False Claims Act, MICH. COMP. LAWS § 752.1001 *et seq*., Count IV; Breach of Contract, alternatively, Breach of Covenant of Good Faith and Fair Dealing, Count V; Breach of Common Law Fiduciary Duty, Count VI; Conversion, Count VII; Fraud/Misrepresentation, Count VIII; and Silent Fraud, Count IX.

## III.   LAW & ANALYSIS

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than

labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
*Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556
U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of
'further factual enhancement.'" *Id.* "[A] complaint must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires
"more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-
pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the
complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.*

### B.     BCBS's Motion to Dismiss Under Rule 12(b)(6)

In the present motion, BCBS argues that Plaintiffs' ERISA claims are time-barred since East
Jordan had actual knowledge of the disputed fees in 2003 based on the ASC's disclosure of such
fees. Thus, the claims in the Complaint are time-barred because Plaintiffs did not file the instant
action until 2012, or more than nine years after they had actual knowledge of the disputed fees.
East Jordan counters that these so called disclosures were, at best, ambiguous and misleading.
Moreover, nothing in the alleged disclosures explain how much the fee would be nor how it would
be calculated. Additionally, the applicable ASC sets forth East Jordan's financial responsibilities
in Article III, and none of the delineated financial obligations identify the payment of these fees.
Thus, Plaintiffs maintain that this action was filed well within the statute of limitations because they
have alleged fraud and concealment of the hidden fees until Plaintiffs discovery of such fees in 2012.

### 1.     Statute of Limitations

Section 1113 of the ERISA contains three different limitations period, specifically:

No action may be commenced under this title with respect to a fiduciary's breach of

any responsibility, duty, or obligation under this part . . . or with respect to a violation of this part . . . after the earlier of–

(1)     six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2)     three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113. Application of the ERISA statute of limitations involves a "two-step" process. *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1178 (3d Cir. 1992). The first step is "the identification and definition of the underlying ERISA violation upon which the fiduciary breach claim is founded." *Id*. The second step involves "[t]wo temporal determinations [that] must then be made: the date of the last action which formed a part of the breach and the date of the plaintiff's actual knowledge of the breach." *Id*.

The early stage of these proceedings compels the conclusion that a decision on when Plaintiffs had "actual knowledge" of the alleged ERISA violations would be premature. The parties have yet to receive a scheduling order in this case, and it is unclear whether initial disclosures have been exchanged. Thus, the parties have little to no facts to support their respective positions on this issue. In any event, this is a Rule 12(b)(6) motion, thus it is inappropriate for the Court to rely on evidence outside of the pleadings. The "actual knowledge" required under §1113(2) has been described as a "high standard," a "stringent requirement," and a "rigorous . . . requirement." *Gluck*, 960 F.2d at 1176. "This inquiry into plaintiffs' actual knowledge is entirely factual, requiring examination of the record." *Ziegler v. Conn. Gen. Life Ins. Co.*, 916 F.2d 548, 552 (9th Cir. 1990). "[I]t is not enough that [a plaintiff] had notice that something was awry; he must have had

-7-

specific knowledge of the actual breach of duty upon which he sues." *Id.*

"The six-year statute of limitations should be applied in cases in which a fiduciary: (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce [a party] to act to his detriment, or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Caputo v. Pfizer*, 267 F.3d 181, 190 (2d Cir. 2001); *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 550 (6th Cir. 2012). For example, where plan administrators "engaged in actions that violated their fiduciary duties, failed to disclose material information to Plan participants, and concealed material information from them," there is "fraud or concealment" sufficient to invoke the six-year discovery statute of limitations." *Frulla v. CRA Holdings, Inc.*, 596 F. Supp. 2d 275 (D. Conn. 2009). Specifically, the *Frulla* court held that the six-year statute of limitations applied where the "defendants took affirmative steps to hinder their discovery by Plan participants, including by furnishing inaccurate Plan financial statements and From 5500 filings to Plan members. *Id.* at 288.

Here, the Court cannot conclude as a matter of law that the ASC language disclosed the "hidden fees" providing "actual knowledge" of the fees to East Jordan in 2003. Specifically, BCBS relies on the following ASC language in support of its theory that East Jordan had actual knowledge of the disputed or "hidden" fees in 2003:

> The Provider Network Fee, contingency, and any cost transfer subsidies or surcharges ordered by the State Insurance Commissioner as authorized pursuant to 1980 P.A. 350 will be reflected in the hospital claims cost contained in the Amounts Billed.

However, taking Plaintiffs' factual allegations as true, as this Court must do in ruling on a motion to dismiss, this language is misleading because it is not listed as a numbered financial responsibility like all the other clearly identified fees in the ASC. This purported "disclosure" is further misleading because it appears to state that the amounts paid under this provision were for "hospital

-8-

claims cost" ordered by the State Insurance Commissioner.   It is likewise unclear from this provision that BCBS would be retaining the fees as administrative compensation. Rather, these fees would be "reflected" in the "hospital claims cost."  "Hospital claims cost" is the cost paid to hospitals for services rendered.  Thus, the ASC language could be construed to mean that all amounts ordered by the Insurance Commissioner would be paid to the hospitals.

BCBS also relies on Schedule A in support of its argument that Plaintiffs had actual knowledge of the fees in 2003.  However, Schedule A does not disclose that the disputed fees were paid as "administrative compensation."  Rather, it states in relevant part: "Your hospital claims cost reflects certain charges for provider network access, contingency, and other subsidies as appropriate."  None of the terms contained in this sentence are defined in either the ASC or Schedule A.

Further, BCBS cannot rely on the decision in *Calhoun County v.  Blue Cross Blue Shield of Mich.*, 297 Mich.  App.  1, 824 N.W.2d 202 (2012), wherein the Michigan Court of Appeals concluded, relying on identical contract language, that "the ASC expressly provided for the collection of additional fees beyond the Administrative charge . . . ."  *Calhoun County*, 297 Mich. App. at 7.  However, this Court, reviewing the same contract language and legal issues, has already determined that *Calhoun County* is inapplicable to the ERISA issues raised herein.  *See Borroughs Corp.  v.  Blue Cross Blue Shield of Mich.*, No.  11-cv-12557, 2012 WL 3887438 (E.D. Mich. Sept. 7, 2012).[2]  In *Borroughs*, the Honorable Victoria A. Roberts concluded that "Calhoun County was not an ERISA case" and "state rules of decision have no binding precedential effect."  *Borroughs*, 2012 WL 3887438, at *4.  This Court agrees with the conclusion reached in *Borroughs*.  The

---

[2]  The parties refer to this case as *Hi-Lex Controls Inc.  v.  Blue Cross Blue Shield*, however the actual case caption is *Borroughs Corp.  v.  Blue Cross Blue Shield of Mich*igan.

-9-

*Calhoun County* case did not raise ERISA claims, as such, the court did not consider whether BCBS's purported misleading statements violated ERISA. *Borroughs,* 2012 WL 3887438, at *4.

Lastly, the *Borroughs* court also rejected BCBS's identical statute of limitations argument in its decision granting in part and denying in part BCBS's Motion for Summary Judgment. *Borroughs,* 2012 WL 3887438, at *11. The *Borroughs* court, relying on identical contract language, and identical cases relied on by BCBS in the present motion, held that "[w]hether, and at what date, Plaintiffs gained actual knowledge of the facts constituting Blue Cross's alleged ERISA violations" is one of the issues of material fact remaining as to BCBS's statute of limitations defense. *Borroughs,* 2012 WL 3887438, at *11. Likewise, this Court finds that a factual dispute exists as to whether Plaintiffs had actual knowledge of the disputed or "hidden" fees in 2003, thus a final resolution of BCBS's statute of limitations defense is unwarranted at this stage of the proceedings. Thus, BCBS's Motion to Dismiss Plaintiffs' claims pursuant to § 1113 of the ERISA is denied without prejudice.

### 2.    ERISA preemption

BCBS also argues that Plaintiffs' state law claims are preempted by ERISA requiring their dismissal with prejudice. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The scope of ERISA preemption is very broad. The United States Court of Appeals for the Sixth Circuit recognizes "that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991). Here, all of Plaintiffs' state law claims arise out of the same operative facts as their ERISA claim. Thus, their claims are subject to dismissal with prejudice. *See Briscoe v. Fine*, 444 F.3d 478, 497 (6th Cir. 2006). In response to BCBS's argument that all of Plaintiffs' state law claims are preempted by

-10-

ERISA, Plaintiffs argue that they "believe [their] state law claims [are] proper.  Nonetheless, Plaintiffs accept the prior ruling of this Court" in *Borroughs Corp.  v.  Blue Cross Blue Shield of Mich.*, *supra,* wherein the court concluded that all of Plaintiffs' state law claims were preempted by ERISA and dismissed those claims with prejudice.  *See Borroughs Corp.*, 2012 WL 3887438, at *10.  Accordingly, Plaintiffs' state law claims are dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, BCBS's Motion to Dismiss Under Rule 12(b)(6) [#18] is GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE.  East Jordan's state law claims are hereby dismissed with prejudice.

SO ORDERED.

Dated: May 3, 2013                                      /s/Gershwin A Drain
                                                       GERSHWIN A.  DRAIN
                                                       UNITED STATES DISTRICT JUDGE